UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI ANN SMITH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 1:21-cv-00312-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 23)<br><br>FOURTEEN-DAY DEADLINE |

**INTRODUCTION**

Plaintiff Lori Ann Smith ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for issuance of findings and recommendations. (Docs. 23-25.)

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record and is based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's appeal and affirming the agency's determination to deny benefits.

1

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed a Title II application for disability insurance benefits on December 2, 2017. AR 26, 176, 263-264. Plaintiff alleged that she became disabled on January 5, 2017. AR 176, 263-264. Plaintiff's application was denied initially and on reconsideration. AR 176, 191. Plaintiff requested a hearing before an ALJ, and ALJ Shane McGovern held a hearing on December 10, 2019. AR 128-161. ALJ McGovern issued an order denying benefits on the basis that Plaintiff was not disabled on February 5, 2020. AR 23-45. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 7-12. This appeal followed.

**December 10, 2019 Hearing Testimony**

The ALJ held a telephonic hearing on December 10, 2019. AR 128-161. Plaintiff appeared with her attorney, Jonathan Pena. *Id.* Cyndee Burnett, an impartial vocational expert, also appeared and testified. AR 155-160. The ALJ admitted exhibits lA through 37F into the record. AR 132.

Plaintiff's attorney, Mr. Pena, opened by noting that a disability finding was appropriate as Plaintiff's impairments limit her to a "less sedentary range of work," arguing that Plaintiff would not be able to stand or walk for two hours or sitting for an extended period of time in an eight-hour day. AR 133-134. Mr. Pena stated that the record showed that Plaintiff needed to elevate her lower extremities and had manipulative limitations. AR 133. The ALJ asked whether there was anything in the record regarding findings for Plaintiff's upper right extremity. AR 134. Mr. Pena responded that there were no findings meeting requirements regarding Plaintiff's right upper extremity. *Id.* Mr. Pena referenced Exhibit 21F and noted that there was an examination on October 3, 2018, in which Plaintiff's abnormal gait was examined as well as Plaintiff's right upper extremity reflexes. AR 135.

Plaintiff testified that she was born on September 14, 1974, was divorced, and had three children. AR 136-137. Plaintiff testified that she lives with her three children and her boyfriend, and that everyone got along in the house. AR 137. Plaintiff had a driver's license but stated that she did not usually drive herself. *Id.* When Plaintiff did drive herself somewhere, it would usually be into town for a quick errand approximately five to ten miles from where she lived and then would return straight home. *Id.* Plaintiff testified that she significantly cut back on her driving immediately

following her initial surgery in 2014. AR 138. Plaintiff would drive approximately once per month, and her boyfriend or children would drive her to doctor's appointments. *Id.*

Plaintiff testified that the highest grade she completed was graduating high school. *Id.* She had not worked since January 5, 2017. *Id.* Plaintiff testified that the most recent job she had was at Alorica, where she worked full-time for three months. AR 139. Previously, she worked at Walmart for three months, where she worked the register and would lift, scan, and return items as well as correcting areas of the store and retrieving carts. *Id.* She testified that "at times," she would be on her feet most of the day, lifting up to approximately 50 pounds. *Id.* Prior to working at Walmart, Plaintiff worked at Payless Shoe Source for approximately five months. *Id.* In 2012, Plaintiff worked for the Plus Group agency for approximately two months. AR 140. She also worked for System One temporary service for one month, where she worked as a temporary teller at a bank. *Id.* In that position, Plaintiff testified that she worked eight-hour shifts, handled money and paper, and the maximum she lifted was less than ten pounds. AR 140-141. There, she was on her feet approximately two hours per day. AR 141. Plaintiff testified that she also worked at San Francisco Bay Books, where she supervised other employees, shelved books, maintained bookshelves, helped customers, checked boxes and new books, maintained creative displays, and worked the register. *Id.* There, she lifted up to approximately twenty pounds and was on her feet most of the day. *Id.*

In response to questions from her attorney, Plaintiff testified that she tried working a "seating job" at Alorica to see if she could handle that after not being able to stand on her feet all day at Walmart, but could not sit and answer phones all day. AR 142. She testified that her right wrist started bothering her from the constant typing and she was not able to stand up when she needed to, causing her bad back cramps. AR 142-143. Plaintiff testified that it helped relieve the pain to "walk around in a small area for a minute" and that she can tolerate sitting for 20 minutes maximum before she would need to stand up and move around. AR 143. She testified that after 20 minutes, she would begin feeling pain in her right lower back which would radiate to her right foot, causing her right leg to feel as if it were on fire. *Id.* She experienced this pain "all the time," and rated the pain a seven out of ten with medication. AR 144. She testified that if she walks for more than 20 minutes to do activities such as grocery shopping, she experiences pain in her right leg and lower back. *Id.*

   Plaintiff testified that she had attempted to alleviate the pain through: a 2014 surgery to remove a tumor from her spinal cord, physical therapy two or three times after the surgery, and trigger point and deeper injections in her lower back. AR 144-145. She also took medications, and lost hair as a side effect of nerve medication. AR 145. Plaintiff further testified that her hands would become tingly and numb from migraine medication. *Id*. She further testified that she had three discs in her neck that may need to be replaced, and her neck caused her a six or seven out of ten pain level on an average day. *Id.* She testified that the neck pain is there "all the time." AR 145-146. Plaintiff testified that sitting too long reading with her neck in a downward position or at a computer would aggravate her neck and cause swelling on the right side of her neck and pain going down her arm and back. AR 146. Plaintiff testified that she had not undergone any injections yet for her disc-related neck issues, as she had a poor reaction to a lower back injection the prior month. *Id.*

   Plaintiff further testified that the pain in her wrist from typing or writing was related to carpal tunnel syndrome, while the numbness and tingling is related to her neck issues. AR 147. Plaintiff testified that she was right-handed. *Id.* She stated that she could do activities including typing, folding clothes, or washing dishes for approximately 15 to 20 minutes before needing at least an hour break from the activity. *Id.* She testified that the neck-related numbness or pain has caused her to have difficulties grasping a spoon if there is a lot of stirring involved in preparing a meal. *Id.* Plaintiff testified that she does other tasks involving the use of her hands "very carefully. AR 147-148. She testified that when she showers, she would usually keep one hand on top of the shower to sturdy herself due to balance issues. AR 148. In responding to a question about whether she could stand in line at a grocery store, Plaintiff testified that she could stand in one spot for approximately 15 minutes before she would need to move or sit down, but would always lean on a shopping cart. *Id.*

   Plaintiff also testified that she suffered from restless leg syndrome and believed it was related to damage done to her spinal cord when she had a tumor. AR 148-149. This caused her right leg to begin jerking. AR 149. This typically occurred at night and prevented Plaintiff from sleeping, even when she took her medication. *Id.* She further testified that she followed recommendations to elevate her leg by sitting on her recliner, typically sitting in her recliner for at least five hours per day. *Id.* She usually slept five to six hours per night which made her "tired all the time." *Id.* This caused her

4

to have to lie down and rest for at least 1.5 hours per day. AR 150. Plaintiff also testified that she has migraines every month for approximately seven to fourteen days, during which she takes medication to alleviate some of the nausea, vomiting, and sensitivity. *Id.* However, she stated that she would "always" have breakthrough migraines during which she would be nauseous and need to rest in her bedroom in complete silence and darkness. AR 150-151. Those breakthrough migraines would occur at least once a month and last for at least two days straight. AR 151.

Plaintiff testified that her typical morning schedule included: letting her dogs outside, turning on the coffee pot, sitting in her recliner and watching the morning news, doing any laundry that needs to be done while sitting in between the washing and drying. AR 151. She also testified that she would read a lot, would run errands if she had any, and paid bills that need to be paid. *Id.* In the afternoon, she would: make lunch if her children were home or prepare a simpler lunch for herself. *Id.* She would then make dinner, which required her sitting in the kitchen next to the stove or sitting at the dining room table and going back and forth between the kitchen stove and table to be able to move as needed. *Id.* Plaintiff testified that she spent approximately two hours per day doing chores. AR 152.

Plaintiff further testified that prior to having surgery in 2014, she would walk everywhere, would go camping and swimming, and would travel. *Id.* However, she stated that post-surgery she could not do any of those things and could "barely tolerate riding in a car for 30 minutes, let alone going on a road trip." *Id.* She noted that she was active prior to the surgery and had gained over 50 pounds due to her limited mobility. *Id.* She further stated that she needed to keep her hair at a short length because she could not brush longer hair anymore. *Id.*

In response to questions from the ALJ, Plaintiff testified that her hands started bothering her approximately one year prior to the hearing, but had not had carpal tunnel surgery or other treatment. AR 153. Plaintiff clarified that her right hand primarily hurt, but she had some less-severe issues with her left hand. *Id.* Plaintiff wore a brace on her right hand for her carpal tunnel syndrome and began wearing it approximately four months ago. *Id.* She testified that the brace on her right hand helped, but she did not wear a brace or anything similar for her left side. AR 154. In response to questions from her attorney, Plaintiff testified that she reported weakness in her hands and had dropped things in 2017, prior to the carpal tunnel syndrome. *Id.* Plaintiff testified that these issues with her hands were

1 connected to her neck issues. *Id.* She further stated that the carpal tunnel syndrome caused her pain. *Id.*

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. AR 155-160. VE Cyndee Burnett first affirmed that her resume was accurate, she had not discussed the merits of the case previously, she could provide an impartial and neutral opinion, and had reviewed the file to familiarize herself with Plaintiff's vocational background. AR 155. Plaintiff's attorney stipulated to the qualifications of the VE. *Id.*

The VE first summarized Plaintiff's past work as: "cashier, DOT code 211.462-010, SVP 2, exertional level per DOT as light and as actually performed by claimant, medium;" another cashier position at the bookstore that was performed at the light level; "assistant store manager DOT code 189.167-C18, SVP 6, exertional level per DOT and claimant are both light;" and "bank teller, DOT code 211.362-018, SVP 5, exertional levels per DOT and claimant are both light." *Id.*

The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to consider a person with the Plaintiff's age, education, and work background who could perform sedentary work as defined by regulations; could not use ladders, ropes, or scaffolds; could occasionally use ramps and stairs, could occasionally balance, stoop, crouch, kneel, or crawl; and who would have no exposure to moving mechanical parts, unprotected heights, or excessive vibration. *Id.* The VE testified that all past work would be eliminated. *Id.* The VE testified that other jobs for the hypothetical individual included: document preparer ("DOT Code 249.587-C18, SVP 2, exertional level sedentary, national employment numbers approximately 20,000"); addressing clerk ("DOT code 209.587-010, SVP 2, exertional level sedentary, national employment numbers approximately 13,000"); printed circuit board assembler ("DOT Code 726.684-110. SVP 2, exertional level sedentary, national employment numbers approximately 10,000"); and final assembler ("DOT code 713.687-018, SVP 2, exertional level sedentary, national employment numbers approximately 6,000"). AR 157.

For the second hypothetical, the ALJ asked the VE to add to the first hypothetical a limitation of no more than frequent handling, fingering, and feeling with the right upper dominant extremity. *Id.* The VE testified that all jobs would still be available. *Id.* The ALJ then asked the VE what the effect

1  on jobs would be if the ALJ dropped to occasional feeling with the right dominant upper extremity.
2  *Id.* The VE testified that the jobs would be eliminated. AR 158. The ALJ further asked if there
3  would be any work that would fit "within that type of hypothetical" if occasional handling, fingering,
4  and feeling on the right upper extremity were added. *Id.* The VE testified that this would eliminate all
5  work. *Id.* The ALJ then asked the VE what her opinion was as to employer tolerance for off-task
6  behavior and absenteeism. *Id.* The VE testified that employers tolerate off-task activities for no more
7  than ten percent of the workday and tolerate absenteeism no more than one day per month on average.
8  *Id.*

9  Plaintiff's attorney then examined the VE. Plaintiff's attorney asked if the VE could add to the
10 first hypothetical that the individual would need to take unscheduled breaks, and that this would occur
11 in addition to normal breaks and lunch periods four times a day for ten minutes in duration. *Id.* The
12 VE testified that this would eliminate all work. *Id.* Plaintiff's attorney then asked the VE to add to the
13 individual in the second hypothetical frequent upper extremity limitations regarding handling, feeling,
14 and fingering and a limitation that the individual could only sit for 20 minutes at a time before needing
15 to stand for approximately two to three minutes before sitting again. AR 158, 160. The VE testified
16 that this would eliminate those jobs and all other work. AR 160. The VE testified that her testimony
17 was consistent with the Dictionary of Occupational Titles with the exception of her testimony
18 regarding reaching, handling, and fingering for different sides of the body; the sit/stand option; off-
19 task tolerance; and absenteeism and additional break tolerance, which was based upon her knowledge
20 of public jobs and industry standard through job analysis. *Id.* In closing, Plaintiff's attorney noted
21 that they maintained the position in their representative brief at Exhibit 17E. *Id.*

22 **Medical Record**
23 The relevant medical record was reviewed by the Court and will be referenced below as
24 necessary to this Court's decision.

25 **The ALJ's Decision**
26 Using the Social Security Administration's five-step sequential evaluation process, the ALJ
27 determined that Plaintiff was not disabled under the Social Security Act. AR 23-45. Specifically, the
28 ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of

1   January 5, 2017, through her date last insured of December 31, 2018.  AR 28.  The ALJ identified the
2   following severe impairments: cervical, thoracic and lumbar spine degenerative disc disease; migraine
3   headaches; and obesity.  AR 29.  The ALJ additionally evaluated and discussed other impairments that
4   did not constitute severe medically determinable impairments, including: restless leg syndrome, carpal
5   tunnel syndrome, and hyperlipidemia, but found that the conditions did not have more than a minimal
6   effect on Plaintiff's abilities to perform basic work activities.  AR 29-30.  The ALJ determined that
7   Plaintiff did not have an impairment or combination of impairments that met or medically equaled any
8   of the listed impairments.  AR 30.

9   Based on a review of the entire record, the ALJ found that Plaintiff retained the residual
10  functional capacity ("RFC") to perform sedentary work with limitations that: Plaintiff cannot climb
11  ladders, ropes, or scaffolds; Plaintiff can only occasionally climb ramps and stairs, balance, stoop,
12  kneel, crouch, or crawl; and Plaintiff cannot work around unprotected heights, moving mechanical
13  parts, or excessive vibrations.  AR 31-36.  In doing so, the ALJ considered all of Plaintiff's symptoms,
14  objective medical evidence and other evidence, medical opinions, and prior administrative medical
15  findings.  *Id.*

16  With this RFC, and considering Plaintiff's age, education, and work experience, the ALJ found
17  that Plaintiff was unable to perform any past relevant work.  AR 36-37.  However, the ALJ found that
18  there were jobs that exited in significant numbers in the national economy that the claimant could have
19  performed, including: Document Preparer (DOT code 249.587-018, with an SVP of two, generally
20  performed at the sedentary exertion level with approximately 20,000 jobs available in the national
21  economy); Addressing Clerk (DOT code 209.587-010, with an SVP of two, generally performed at the
22  sedentary exertion level with approximately 13,000 jobs available in the national economy); Circuit
23  Board Assembler (DOT code 726.684-110, with an SVP of two, generally performed at the sedentary
24  exertion level with approximately 10,000 jobs available in the national economy); and Final
25  Assembler (DOT code 713.687-018, with an SVP of two, generally performed at the sedentary
26  exertion level with approximately 6,000 jobs available in the national economy).  AR 38.  The ALJ
27  therefore concluded that Plaintiff had not been disabled at any time from January 5, 2017, the alleged
28  onset date, through December 31, 2018, the date last insured.  *Id.*

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# **DISCUSSION**[1]

Plaintiff contends that the ALJ erred by failing to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations as the ALJ failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints. (Doc. 23 at 12-15; Doc. 25 at 1-3.)

### A. Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence. (Doc. 23 at 12-15; Doc. 25 at 1-3.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison*, 759 F.3d at 1014; *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 35. However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record. *Id*. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

In assessing Plaintiff's statements and subjective complaints, the ALJ noted:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent for the

---

[1] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

> following reasons. The claimant had mostly normal physical examination results of normal range of motion, strength, sensation, reflexes and gait with only intermittent findings of neck, back and leg tenderness, an abnormal gait, reduced leg strength, abnormal reflexes, reduced left shoulder and right hip range of motion and one positive straight leg raise on the right. (Exhibits 4F/9, 12; 14F/5, 9, 13-14, 23, 27, 31, 35, 40, 44; 5F/3; 6F/3-4; 21F/25-26, 31-32; 25F/7, 14; 27F/9, 12; 30F/2-3, 7-8, 13-14; 34F/34, 39, 44; 36F/7) The claimant reported during multiple medical appointments, that her medication and/or injections helped control her neck, back and leg pain. (Exhibits 6F/4; 14F/2-3; 25F/6) The claimant only intermittently complained of migraine-type headaches. (Exhibits 14F/14, 35, 40-41; 36F/6-8) The claimant reported that she can drive short distances, walk for twenty minutes before needing a break, use her hands for fifteen to twenty minutes before needing a break, write, work on a computer, grocery shop with a cart, watch television, read, cook and prepare food, lift and carry items weighing up to twenty pounds occasionally and do chores with breaks. (Exhibit 5E and Hearing Testimony)

AR 35.

First, the ALJ noted the inconsistences between Plaintiff's symptom statements and objective medical evidence in the record. *Id*. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ pointed to the objective medical evidence in the record showing that Plaintiff had "mostly normal physical examination results of normal range of motion, strength, sensation, reflexes and gait with only intermittent findings of neck, back and leg tenderness, an abnormal gait, reduced leg strength, abnormal reflexes, reduced left shoulder and right hip range of motion and one positive straight leg raise on the right." AR 35. This is supported by the relatively normal physical examination findings in the record. *See* AR 419 (normal physical findings, including normal findings as to neck and extremities), 422 (normal physical findings); 565 (normal findings as to neck, noting follow-up regarding lower back pain); 569 (normal neck examination findings, assessment of chronic bilateral low back pain and lumbago with sciatica on right side); 573-574 (normal neck findings, assessments of chronic bilateral low back pain with bilateral sciatica and lumbago with sciatica on right side); 583 (normal neck findings, "L trap tender with trigger point that send pain down her L

arm. Discussed treating with steroid injection" and proceeded with steroid injection, assessing myofascial pain and treating with trigger point injection); 587 (generally normal findings of physical exam); 591 (normal neck and physical exam findings); 595 (noting gait disturbance, numbness in extremity, back pain, joint pain, but normal findings in physical exam); 600 (normal physical exam findings); 604 (normal physical exam findings); 486 ("negative for back pain. Left shoulder pain," physical exam includes mostly normal findings except for tenderness at left trapezius and decreased range of motion in left shoulder, but no "swelling, mass, or erythema. Motor, vascular and sensory intact distal to left shoulder"); 502-503 (generally normal physical exam findings and normal musculoskeletal findings with normal tone, movement, gait, no crepitus, and no tenderness or edema. Noting neck is supple but "Right paraspinal muscle mass at base of neck and at margin of upper medial corner of scapula with tenderness to palpation"); 742-743 (Generally normal physical exam findings but noting "spastic gait, Moves all extremities against gravity… Pain left SI joint and pain with left hip movement"); 748-749 ("Neck: Normal range of motion. Neck supple… Right shoulder: She exhibits bony tenderness (tenderness on the low back on palpation). She exhibits normal range of motion and no tenderness. Lumbar back: She exhibits tenderness, bony tenderness and pain… Gait abnormal"); 795 (normal neck findings, normal musculoskeletal bones and joints findings, normal motor system findings); 820 (normal neck and musculoskeletal findings); 855-856 (normal findings in musculoskeletal exam, normal appearance and palpation of skin in bilateral upper and lower extremities, normal gait, normal findings for upper extremity ROM and Stability examination, 4/5 to 5/5 in lower extremity assessment of strength); 866-867 (normal findings in musculoskeletal exam, normal appearance and palpation of skin in bilateral upper and lower extremities, normal gait, normal findings for upper extremity ROM and Stability examination, 4/5 to 5/5 in lower extremity assessment of strength); 924 (normal physical exam findings); 929 (normal physical exam findings); 934 (normal physical exam findings as to constitutional and extremity); 993 (generally normal physical examination findings, including "Neck: Supple" and "Musculoskeletal: Normal range of motion."). The ALJ thus properly used the generally normal results of Plaintiff's physical examinations as part of the analysis discounting Plaintiff's testimony.

Plaintiff argues that the ALJ "cherry-picked normal examination findings to support his conclusions." (Doc. 23 at 13.) The Ninth Circuit has noted that it is "improper for the ALJ to discount [a claimant's] testimony by 'cherry pick[ing]' the absence of certain symptoms from the report." *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017). The Ninth Circuit further cautioned that, "[w]hile ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). As discussed above, the ALJ here noted that the physical examination results were "mostly normal" with "only intermittent findings of neck, back and leg tenderness, an abnormal gait, reduced leg strength, abnormal reflexes, reduced left shoulder and right hip range of motion and one positive straight leg raise on the right," citing to a range of physical examination reports rather than choosing unrepresentative data points. AR 35. Accordingly, the ALJ properly considered medical evidence as one factor in discounting Plaintiff's testimony.

Second, the ALJ considered that Plaintiff "reported during multiple medical appointments, that her medication and/or injections helped control her neck, back and leg pain" and that she "only intermittently complained of migraine-type headaches." AR 35. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983)).

Here, the ALJ cited treatment reports noting patient's positive responses to medication and other forms of treatment in relation to her neck, back and leg pain. *See* AR 503 (noting patient tolerated trigger point injection well and the pain "decreased from 8/10 to 3-4/10"); 562-563 (Regarding chronic back pain, report notes that the previous "visit we stopped baclofen and started Robaxin. She reports that it works better."); 794-795 (Plaintiff was negative for joint pain, joint stiffness, joint swelling, muscle cramps, or myalgia in musculoskeletal system review and neck and musculoskeletal physical exam findings were normal). The ALJ further noted that Plaintiff only intermittently complained of migraine-type headaches, indicating that this impairment was sufficiently

13

1 controlled. *See* AR 574 (noting "Menstrual migraine without status migrainosus, not intractable" and that Imitrex was refilled); 595 (noting "Menstrual migraine without status migrainosus, not intractable," and that Plaintiff was to schedule a follow-up visit routine); 600-601 (noting "She also have migraines headaches related to the mentrual [*sic*] cycles only"); 987-989 (Main complaint is chronic migraine, Plaintiff reported "same frequent migraines especially prior and after her menstrual [*sic*] cycle" and increased Topamax, started Diclofinec, and continued Ropinerol.). Given that the ALJ assessed the record to determine whether Plaintiff's impairments were effectively controlled, the ALJ properly used Plaintiff's treatment as a basis to discount Plaintiff's symptom testimony.

Third, the ALJ noted that Plaintiff "reported that she can drive short distances, walk for twenty minutes before needing a break, use her hands for fifteen to twenty minutes before needing a break, write, work on a computer, grocery shop with a cart, watch television, read, cook and prepare food, lift and carry items weighing up to twenty pounds occasionally and do chores with breaks." AR 35 (citing Exhibit 5E and Hearing Testimony). The ALJ's statements invoke the reasoning that Plaintiff's subjective symptoms and difficulties were inconsistent with her relatively intact daily activities. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds*. Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

Here, Plaintiff testified that she could drive short distances for quick errands. AR 137. She further testified that she could walk up to 20 minutes before she experienced pain in her right leg and lower back. AR 144. Plaintiff also stated that she could do activities including typing, folding clothes, or washing dishes for approximately 15 to 20 minutes before needing at least an hour break from the activity. AR 147. She further testified that she could do brief grocery shopping with a cart and could stand in line at a grocery store while leaning on a cart. AR 144, 148. Plaintiff also stated that she would read during the day, though sitting too long with her neck in a downward position or at

14

a computer would aggravate her neck and cause swelling and pain. AR 146, 151. Plaintiff further testified that she spent approximately two hours per day doing chores, including paying bills and making lunch and dinner for her children and herself while sitting in the kitchen or dining room. AR 151-152. The Court therefore finds the ALJ appropriately discounted Plaintiff's subjective complaints given Plaintiff's demonstrated activities.

Plaintiff argues that the ALJ mischaracterized Plaintiff's testimony and erred by failing to explain how these activities are inconsistent with Plaintiff's alleged limitations. (Doc. 23 at 14-15.) Plaintiff further argues that the ALJ did not adequately identify the testimony that he found not credible and did not link it to the parts of the record that supported his determination. (*Id.* at 15.) In support, Plaintiff cites the Ninth Circuit's order in *Brown-Hunter v. Colvin*. 806 F.3d 487, 494 (9th Cir. 2015) ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.")

In *Brown–Hunter*, the Ninth Circuit reiterated its holding that an ALJ errs "by making only a single general statement that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment, without identifying sufficiently specific reasons for rejecting the testimony, supported by evidence in the case record." *Id.* at 493 (citation and quotation marks omitted). There, the ALJ "stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged.' " *Id*. The Ninth Circuit found the ALJ's analysis erroneous and concluded that any such error was not harmless as it could not "discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony to be not credible." *Id.* at 494. The failure to identify which testimony the ALJ found not credible and which evidence contradicted that testimony fell short of meeting the ALJ's responsibility to provide the reason or reasons upon which her adverse determination was based. *Id*. at 494-95 (citation omitted).

The Court finds this case distinguishable from *Brown–Hunter*. Here, the ALJ summarized portions of Plaintiff's subjective testimony regarding the persistence, intensity, frequency, and limiting effects of her pain. AR 31-32, 35. For instance, the ALJ noted that Plaintiff "claimed lipoma of the spinal cord, misalignment of upper neck, arthritis in lumbar back, arthritis in lower and upper neck, permanent spinal nerve damage, restless leg syndrome of the right leg, migraines and inflammation in neck affect her ability to work." AR 31 (citing AR 284). In contrast, the ALJ cited examples of Plaintiff's testimony of tasks and chores she could still accomplish. AR 35, 137 (Plaintiff testified that she could drive short distances for quick errands), 147 (Plaintiff testified that she could type, fold clothes, or wash dishes for approximately 15 to 20 minutes before needing a break), 151-152 (Plaintiff further testified that she spent approximately two hours per day doing chores, including paying bills and making lunch and dinner for her children and herself while sitting in the kitchen or dining room). *Brown–Hunter* is also distinguishable because, as discussed above, the Court is able to "reasonably discern" the ALJ's path. *See*, *e.g.*, *Green v. Saul*, No. 1:19-cv-00058-BAM, 2020 WL 1227895, at *10 (E.D. Cal. Mar. 13, 2020) (distinguishing *Brown-Hunter* and noting that while the ALJ's opinion could have been more clearly stated, the court was able to reasonably discern the ALJ's path for the purpose of review), report and recommendation adopted, No. 1:19-cv-00058-NONE-BAM, 2020 WL 3496998 (E.D. Cal. June 29, 2020); *Hoefer v. Berryhill*, No. 1:17-cv-01695-BAM, 2019 WL 1283932, at *5, n. 5 (E.D Cal. Mar. 20, 2019) (same). Moreover, even if the ALJ did err in discounting Plaintiff's testimony based upon her daily activities, this error is harmless because the ALJ cited other valid reasons in discounting Plaintiff's testimony. *See Runions v. Saul*, 833 F. App'x 121, 124 n.1 (9th Cir. 2020) ("The ALJ erred in citing [claimant] Runions' activities as a reason for discounting Runions' symptom testimony... Nevertheless, this error was harmless because the ALJ cited other valid reasons for discounting Runions' testimony.")

The Court therefore finds that the ALJ did not err in discounting Plaintiff's subjective complaints.

///

///

//

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.

Further, for the reasons stated above, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and

2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Lori Ann Smith.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 12, 2023**         /s/ *Barbara A. McAuliffe*
                                 UNITED STATES MAGISTRATE JUDGE