UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI ANN SMITH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY[1]<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:21-cv-0312 JLT BAM<br><br>ORDER DECLINING TO ADOPT THE FINDINGS AND RECOMMENDATIONS, GRANTING PLAINTIFF'S APPEAL, DENYING THE COMMISSIONER'S REQUEST TO AFFIRM, AND REMANDING THE ACTION FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF LORI ANN SMITH AND AGAINST DEFENDANT MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY<br><br>(Docs. 23, 24 and 26) |

　　　　Lori Ann Smith seeks judicial review of a final decision denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. (Doc. 23.) Plaintiff asserts the administrative law judge erred in evaluating Plaintiff's subjective statements concerning her impairments. (*Id.* at 12-15.) She requests the decision of the ALJ be vacated and the matter be remanded for further proceedings. (*Id.* at 15.) The Commissioner asserts the ALJ identified legally sufficient reasons to support the decision, and it should be affirmed. (Doc. 18.)

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

1

I. **Findings and Recommendations of the Magistrate Judge**

The magistrate judge observed that in evaluating Plaintiff's subjective complaints, the ALJ considered the objective medical evidence, the effectiveness of treatment, and Plaintiff's level of activity. (Doc. 26 at 11-17.) Specifically, the magistrate judge found the ALJ "properly used the generally normal results of Plaintiff's physical examinations as part of the analysis discounting Plaintiff's testimony." (*Id.* at 12.) The magistrate judge also observed that "the ALJ cited treatment reports noting patient's positive responses to medication and other forms of treatment in relation to her neck, back and leg pain" and "only intermittently complained of migraine-type headaches." (*Id.* at 13-14.) The magistrate judge determined, "Given that the ALJ assessed the record to determine whether Plaintiff's impairments were effectively controlled, the ALJ properly used Plaintiff's treatment as a basis to discount Plaintiff's symptom testimony." (*Id.* at 14.) Finally, the magistrate judge found "the ALJ cited examples of Plaintiff's testimony of tasks and chores she could still accomplish" and properly considered her level of activity. (*Id.*) The magistrate judge concluded "the ALJ did not err in discounting Plaintiff's subjective complaints." (*Id.*) Therefore, the magistrate judge recommended Plaintiff's appeal be denied. (*Id.* at 17.)

II. **Objections**

Plaintiff filed objections to the Findings and Recommendations, asserting the "finding that the ALJ properly evaluated Plaintiff's subjective complaints should be rejected." (Doc. 27 at 1, emphasis omitted.) Plaintiff contends the ALJ failed to explain why the identified "medical evidence is inconsistent with Plaintiff's alleged pain." (*Id.* at 2-3.) Plaintiff also argues, "the ALJ failed to show that Plaintiff's pain was effectively controlled," because she "continued to require injections, which she at times reported provided no relief." (*Id.* at 3-4.) Furthermore, Plaintiff contends that "[t]he ALJ failed to explain how Plaintiff's alleged pain is contradicted by her limited daily activities." (*Id.* at 4.) Plaintiff asserts she did not spend "a substantial portion of her day" engaged in the identified activities, and "her limited chores are not activities transferable to a work environment." (*Id.*, quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (internal quotation marks omitted).) Plaintiff concludes "the ALJ failed to adequately consider the impact of Plaintiff's pain and related symptoms when assessing his overall functional capacity," and the matter should be remanded. (*Id.* at 5.)

2

## III. Discussion and Analysis

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..." 28 U.S.C. § 636(b)(1). If a party files objections, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.* A de novo review requires the Court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

### A. Evaluation of Plaintiff's subjective statements

In evaluating a claimant's statements regarding the severity of her symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must set forth clear and convincing reasons for rejecting subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48. The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The ALJ determined "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 13-2 at 40.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

3

consistent with the medical evidence and other evidence in the record..." (*Id.*)  In support of the conclusion that Plaintiff's statements were "inconsistent" with the record, the ALJ stated:

> The claimant had mostly normal physical examination results of normal range of motion, strength, sensation, reflexes and gait with only intermittent findings of neck, back and leg tenderness, an abnormal gait, reduced leg strength, abnormal reflexes, reduced left shoulder and right hip range of motion and one positive straight leg raise on the right. [Citation.]The claimant reported during multiple medical appointments, that her medication and/or injections helped control her neck, back and leg pain. [Citation.]The claimant only intermittently complained of migraine-type headaches. [Citation.] The claimant reported that she can drive short distances, walk for twenty minutes before needing a break, use her hands for fifteen to twenty minutes before needing a break, write, work on a computer, grocery shop with a cart, watch television, read, cook and prepare food, lift and carry items weighing up to twenty pounds occasionally and do chores with breaks. [Citation.]

(*Id.*, citations omitted.)  Thus, as the magistrate judge found, the ALJ purported to reject Plaintiff's subjective statements based upon inconsistencies with the objective medical record, the effectiveness of the treatments Plaintiff received, and her activities.  (*See id.*)  The Court must determine whether these were clear and convincing reasons for discounting Plaintiff's statements.

### 1. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute specific and substantial reasons that undermine … credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base his decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor evaluating her subjective complaints.

However, if an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). Importantly, an ALJ may not "cherry-pick" medical evidence that favors disability without considering its context in the record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

As noted above, the ALJ opined the objective medical record showed "mostly normal physical examination results of normal range of motion, strength, sensation, reflexes and gait with only intermittent findings of neck, back and leg tenderness, an abnormal gait, reduced leg strength, abnormal reflexes, reduced left shoulder and right hip range of motion and one positive straight leg raise on the right." (Doc. 13-2 at 40, citing Exhibits 4F/9, 12; 14F/5, 9, 13-14, 23, 27, 31, 35, 40, 44; 5F/3; 6F/3-4; 21F/25-26, 31-32; 25F/7, 14[2]; 27F/9, 12; 30F/2-3, 7-8, 13-14; 34F/34, 39, 44; 36F/7.) However, a careful review of the cited exhibits cited reveals the ALJ took findings out of context, and misrepresents the medical evidence.

There are not any findings related to Plaintiff's range of motion, strength, reflexes, sensation— or indication such were tested—with the cited physical exams findings in Exhibits 4F/9, 12 [Doc. 13-2 at 424, 427]; 14F/5, 9, 13-14, 23, 27, 31, 40, 44 [Doc. 13-2 at 570, 574, 578-79, 588, 592, 596, 605, 609]; Doc. 21F/25-26 [Doc. 13-2 at 747-48]; Exh. 27F/9 [Doc. 13-2 at 835]; Exh. 34F/34 39 [Doc. 13-2 at 929, 934, 44].) Rather, the "physical exam" findings that were normal generally included Plaintiff's constitution, eyes, respiration, neurology, vascular, and psychiatric findings. (*See, e.g.,* Doc. 13-2 at 570, 574, 578-79, 592, 596, 605, 609.) For example, Plaintiff visited the doctor for treatment of a cough on August 23, 2017, and the cited "physical examination" results included Plaintiff's constitution, eyes, ears, nasopharynx, respiration, cardiovascular, abdomen, and psychiatric results. (Doc. 13-2 at 592 [Exh. 14F/27].) The ALJ fails to explain how such evidence is inconsistent with Plaintiff's subjective complaints concerning the severity of her symptoms.

---

[2] Exhibit 25F includes only seven pages. (Doc. 13-2 at 4; *see also id.* at 794-800.) Thus, it appears the citation to page 14 of Exh. 25F was an error.

The limited references to Plaintiff's gait in the cited exhibits also include abnormalities. For example, treatment notes indicate Plaintiff reported "difficulties walking" in September 2018, and was observed walking "with a spastic gait." (Doc. 13-2 at 997-998 [Exh. 36F/6-7].) The following month, Plaintiff again exhibited an "abnormal gait," and "unsteadiness [was] noted during tandem walk." (Doc. 13-2 at 754 [Exh. 21F/26].) In December 2018, Plaintiff presented with an "inward deviation [bilateral] feet; spastic gait," and she "move[d] all extremities against gravity." (*Id.* at 748 [Exh. 14F/26].) Furthermore, though the ALJ indicated Plaintiff had only "one positive straight leg raise," the test to which the ALJ cited—Exhibit 30F/2—on September 17, 2018, appears to be the *first* positive straight leg test. The record shows Plaintiff also had positive straight leg raise tests on June 24, 2019; July 30, 2019; and November 22, 2019. (Doc. 13-2 at 622, 624, 860, 890.) The ALJ fails to explain how this evidence—which suggests a deterioration in Plaintiff's ability to walk— is inconsistent with Plaintiff's statement in her application that her overall health worsened in 2018. (*See id.* at 183.)

Plaintiff also reported a history of menstrual "migraines for 7-10 [days] starting about three day[s] before her period." (Doc. 13-2 at 603; *see also id.* at 441 ("Hx of menstrual migraines starting 2-3 days before ending 203 days after menses"); *id.* at 997 (describing the migraines as "unilateral, throbbing, moderate to severe headache with nausea, light and noise sensitivity" that "may last up to 2 weeks").) The ALJ concluded Plaintiff "only intermittently complained" about these migraines, citing treatment records from April 28, 2017; May 26, 2017; July 5, 2017; November 30, 2017; and September 19, 2018. (Doc. 13-2 at 40, citing Exh. 14F/14, 35, 40-41; 36F/6-8 [Doc. 13-2 at 579, 600, 605-06, 997].) However, the record reveals Plaintiff's treatment providers repeatedly identified the menstrual migraines as an "active problem"—including on July 16, 2016; August 9, 2016; August 31, 2016; December 28, 2016; January 9, 2017; and February 13, 2017. (*See, e.g., id.* at 423, 426, 430, 434, 438, 441.) Indeed, on September 17, 2018—the last date cited by the ALJ—a physician requested a consultation with a neurologist, who later prescribed new medication to treat Plaintiff's migraines. (*Id.* at 783, 927, 997.) Even after this medication change, Plaintiff reported the "same frequent migraines especially prior and after her menstrual cycle," as the tompamax provided "only… minimal relief." (*Id.* at 992, 995 (treatment notes from Dr. Royter dated January 25 and August 21, 2019).) This record undermines the ALJ's suggestion that Plaintiff's migraines were only intermittent issue in 2017.

F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (factors to consider in evaluating a claimant's statements include "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting").

The ALJ observed that Plaintiff "reported that she can drive short distances, walk for twenty minutes before needing a break, use her hands for fifteen to twenty minutes before needing a break, write, work on a computer, grocery shop with a cart, watch television, read, cook and prepare food, lift and carry items weighing up to twenty pounds occasionally and do chores with breaks." (Doc. 13-2 at 40.) However, the AJ did not make any determination that these activities conflict with Plaintiff's other statements concerning her level of activity. (*See id.*) Furthermore, the ALJ did not make any specific findings as to how or whether these limited activities transfer to a work setting. Indeed, the Ninth Circuit determined "[d]aily household chores... are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). Likewise, as Plaintiff argues, the record does not indicate that Plaintiff could—or did—perform any of the activities identified for a substantial part of each day. Thus, the activities identified do not constitute a clear and convincing reason to discount Plaintiff's statements concerning her pain. *See Blau*, 263 Fed. App'x at 637; *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting).

4.     Conclusion

The ALJ failed to meet the burden to identify clear and convincing reasons supporting the adverse credibility determination, which were "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The Court is unable to find the ALJ's decision is supported by substantial evidence in the record.

**B.     Remand for further proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court

reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Plaintiff requests the matter be remanded for further proceedings. (Doc. 23 at 15.)

The ALJ failed to identify legally sufficient reasons to reject Plaintiff's subjective statements, which impacted the residual functional capacity determination. A remand for further proceedings regarding the subjective statements of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints…"). Thus, a remand for further proceedings is appropriate in this action.

**IV.    Conclusion and Order**

Pursuant to 28 U.S.C. § 636 (b)(1)(c), this Court conducted a *de novo* review of the case. Having carefully reviewed the entire matter, the Court finds the ALJ failed to apply the proper legal standards, and declines to adopted the findings of the magistrate judge. Thus, the Court **ORDERS**:

1. The Court declines to adopt the Findings and Recommendations (Doc. 26).
2. Plaintiff's request to remand the decision (Doc. 23) is **GRANTED.**
3. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.
4. The Clerk of Court is directed to enter judgment in favor of Plaintiff Lori Ann Smith and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **March 25, 2024**                                    /s/ Jennifer L. Thurston
                                                                                   UNITED STATES DISTRICT JUDGE